CA NO. 26-124

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | D.C. No. 2:24-cr-00302-JAM-1 |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| JULIAN RAYMON ORTIZ, | ) | |
| Defendant-Appellant. | ) | |

———————————

**OPPOSITION TO GOVERNMENT'S MOTION TO VOLUNTARILY DISMISS APPEAL**

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

HONORABLE JOHN A. MENDEZ
United States District Judge

CARLTON F. GUNN
1751 Colorado Blvd., #384
Los Angeles, California 90041
Telephone (323) 474-6366

Attorney for Defendant-Appellee

CA NO. 26-124

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | D.C. No. 2:24-cr-00302-JAM-1 |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| JULIAN RAYMON ORTIZ, | ) | |
| Defendant-Appellant. | ) | |

———————————

## OPPOSITION TO GOVERNMENT'S MOTION TO VOLUNTARILY DISMISS APPEAL

———————————

Defendant-Appellee, Julian Raymon Ortiz, through his counsel of record, Carlton F. Gunn, hereby opposes the Government's Motion to Voluntarily Dismiss Appeal. This opposition is based on the attached memorandum of points and authorities, all files and records in this case, and such further information as may be provided to the Court.

Respectfully submitted,

DATED: March 25 , 2026          By ___s/Carlton F. Gunn_____
                                                      CARLTON F. GUNN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The government has moved to dismiss its appeal of a district court order dismissing the indictment of Mr. Ortiz. The appeal would present an issue that roiled the Criminal Justice Act system for almost half of last year – and has the potential to roil the system again in the future – namely, whether the absence of funds to pay CJA counsel and other CJA providers needed to aid counsel would prevent counsel from effectively representing indigent defendants. The district court found the absence of funding in this case denied Mr. Ortiz effective assistance of counsel and justified dismissal of the indictment. It reasoned:

> The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to have Assistance of Counsel for his defense." *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963). This right requires the appointment of counsel for Defendant here who effectively assists him in his defense against the serious criminal charge he faces. The right to counsel is meaningless without adequate resources to mount an effective defense. *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985).
> . . .
> . . . [T]he Court finds that dismissal is warranted here. The right to effective assistance of counsel is a bedrock principle of this country and is indisputably necessary for the operation of a fair criminal justice system. The systematic and ongoing failure of the Government to fund CJA-appointed attorneys for the past five months has created an indefensible situation in which CJA defense counsel, such as counsel here, are expected to competently represent and defend their clients despite a complete lack of resources to do so.

Exhibit A, at 2.

This contrasts with the reasoning of another district judge in the very same district, who published a lengthy opinion in another case which the government

filed as authority in Mr. Ortiz's case. That district judge reasoned, relying on a pre-CJA 1965 case, that lawyers traditionally have an "obligation . . . to represent indigents upon court order, without compensation." Exhibit B (quoting *United States v. Dillon*, 346 F.2d 633, 635 (9th Cir. 1965)). As to other providers needed to aid counsel, that district judge rejected defense reliance on *Ake v. Oklahoma*, because *Ake* considered the right to a mental health expert and there was an insufficient showing of need for such an expert in the case before the court. *See* Exhibit B, at 11-12. It ignored the question of access to more commonly used resources, such as investigators and paralegals. *Compare* Exhibit A, at 8 (order in Mr. Ortiz's case noting multiple resources required for effective assistance, including not just experts but also "investigating" and "preparing exhibits").

The district judge in Mr. Ortiz's case recognized the other judge's competing view, but expressly rejected it.

> The Government urges the court to deny Defendant's motion to dismiss by adopting the reasoning in the recently issued order in *United States v. Vasquez*, No. 2:25-cr-0135-WBS, 2025 WL 2961906 (E.D. Cal. Oct. 20, 2025). In *Vasquez*, the court denied a similar motion to dismiss brought by CJA-appointed counsel who had not been paid since June. As defendant argues, *Vasquez* should not be followed by this Court because it relies on aging precedent concerning the historical legal tradition of pro bono service to conclude that there is no constitutional right for a court-appointed criminal defense counsel, including CJA counsel, to receive compensation. *See id.* at *2-6. This analysis appears to focus primarily on defense counsel rather than on the Defendant and the impact on him caused by the Government's Sixth Amendment violation. The issue here is one of a violation of a Defendant's right to adequate representation, not an attorney's right to payment. The *Vasquez* opinion fails to grapple with the prejudice to defendants resulting from Congress's choice not to provide the resources to which they are constitutionally entitled.

Exhibit A, at 9. There is thus a direct conflict in the views of district courts, and even district courts within the same district.

2

In light of this conflict and the importance of the issue, which could recur given the present Congress and Executive, the Court should deny the government's motion to dismiss. The rule governing such motions, Rule 42 of the Federal Rules of Appellate Procedure, states not that the Court of Appeals "shall" grant a voluntary motion for dismissal, but "may" grant it. Case law recognizes circumstances in which such motions may be denied, and such circumstances exist here.

## II.

## ARGUMENT

Rule 42(b)(2) provides – and has long provided – that "[a]n appeal *may* be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court." Fed. R. App. Pro. 42(b)(2) (emphasis added). This use of the word "may" means the court "has discretion in deciding whether to dismiss an appeal." *Shellman v. United States Lines, Inc.*, 528 F.2d 675, 678 (9th Cir. 1975). *See also United States v. State of Washington, Dept. of Fisheries*, 573 F.2d 1117, 1118 (9th Cir. 1978) (Kennedy, J.). "Thus, circumstances may arise which demand, in the interests of justice, that this Court deny appellant's motion to voluntarily dismiss." *Shellman*, 528 F.2d at 678.

While motions to dismiss will generally be granted, they may be denied where the dismissal is sought "for the purpose of evading appellate determination of certain questions." *State of Washington, Dept. of Fisheries*, 573 F.2d at 1118. *See also J.M. v. Red Roof Inns, Inc.*, No. 24-7013, 2025 WL 3458624, at *1 (9th Cir. Oct. 28, 2025) (unpublished) (quoting *State of Washington, Dept. of*

*Fisheries*, 573 F.2d at 1118). And while defense counsel and colleagues cannot read the government's mind, this is a concern here. Without an adverse opinion from this Court, the government has a competing district court opinion to which it can point and simply argue it is that opinion other district courts should follow rather than the opinion in Mr. Ortiz's case. With an adverse opinion from this Court, the government will not be able to make that argument.

The issue presented is an important one, moreover, and one which could very likely recur. The right to counsel, effective assistance from that counsel, and the right to resources for that counsel to provide the effective assistance are among the most fundamental rights in our criminal justice system. *See Ake v. Oklahoma*, 470 U.S. 68 (1985); *Strickland v. Washington*, 466 U.S. 668 (1984); *Gideon v. Wainwright*, 372 U.S. 335 (1963). And in today's climate of budgetary limits and cost-cutting, there is good reason to think CJA funding deficiencies might arise in future years, if not this year.

This also is not a case in which the issue is "presented in the abstract" or "it appears that one of the parties is not willing to fully contest the issue," *State of Washington, Dept. of Fisheries*, 573 F.2d at 1118. The issue was squarely presented in the district court and decided in a lengthy, reasoned opinion. On the other side of the issue, there is a lengthy reasoned opinion from another district court which the district court in this case directly agreed with. And there is no reason to think the government will not do its best to argue its side if the appeal is not dismissed. The government is more likely just seeking to avoid an adverse decision – or at least avoid the work of an appeal.

Finally, the appeal is not mooted by the fact the dismissal in this case was without prejudice and the government may seek a new indictment. The appeal is

4

about *this* indictment in Eastern District of California Case No. 2:24-cr-00302-JAM. And as the district court explained in denying a government motion for reconsideration claiming mootness:

> The Government argues that reconsideration is warranted here because "the sole rationale for the Court's dismissal Order is now moot based upon the restoration of [CJA] funding[.] (Citations to pleadings omitted.) Although CJA funding is now in place, at least until January 31, 2026, the restoration of funding has done nothing to cure the constitutional injury already suffered by Defendant due to Congress's intentional decision not to provide constitutionally mandated funding for over five months. As Defendant's counsel persuasively argues,
>
>> Mr. Ortiz has lost almost 5 months of trial preparation. That cannot be undone and the recent temporary funding bill does nothing to right that wrong. Mr. Ortiz will now be forced to choose between two constitutional rights – effective counsel or speedy trial. Time cannot be excluded for trial preparation when the government created a situation that essentially denied Mr. Ortiz's counsel the ability to prepare for more than five months.
>
> (Citation to pleading omitted.) The Court finds that the injuries suffered by Defendant, and thus the case and controversy before this Court, are far from moot.

Exhibit C, at 5-6.

That the government may be able to obtain and proceed on another indictment is a different question. As the district court explained in addressing that possibility:

> Now that funding for the attorney representing Defendant has been (or will soon be) restored, it is fair to ask what remedy dismissal without prejudice practically provides given the Government's ability to immediately seek a new indictment.
>
> The answer, in this Court's opinion, is that a dismissal without prejudice gives the Defendant the relief to which he is legally entitled – a more even playing field given that his trial is currently set for January 26, 2026, and he has had no opportunity to investigate the charge against him or prepare his defenses. Dismissal requires the Government to start over and decide whether seeking a new indictment under these circumstances is fair and just. Dismissal also puts the Defendant back to the position he was in before his

constitutional right to counsel was violated. Finally, dismissal preserves the integrity of the judicial process.

Exhibit C, at 9-10.

Further, a new indictment with a new indictment date will raise different questions about any differences in the allegations of that indictment; claims of preindictment delay, which will now be greater; and possibly other issues. An appeal of *this* indictment filed on November 7, 2024, *see* Indictment, *United States v. Julian Raymon Ortiz*, No. 2:24-cr-00302-JAM (E.D. Cal. Nov. 7, 2024, ECF No. 1, is not mooted by obtaining a different indictment filed on some future date in 2026.

III.

CONCLUSION

The Court should deny the government's motion to dismiss the appeal.

Respectfully submitted,

DATED: March 25 , 2026       By ___s/Carlton F. Gunn_____
                                     CARLTON F. GUNN

6

# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cr-00302-JAM |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| JULIAN RAYMON ORTIZ, | |
| Defendant. | |

## I.    INTRODUCTION

The current Motion to Dismiss filed on behalf of Defendant Julian Raymon Ortiz ("Defendant") presents an issue of first impression with no known appellate court precedent. Specifically, Defendant moves this Court to dismiss the indictment in this matter under Federal Rule of Criminal Procedure 12(b)(1) arguing his Sixth Amendment Right to Counsel has been violated because his counsel, who was appointed and assigned to Defendant pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, has not received any compensation for her representation since June 2025. This failure to pay these statutory mandated funds has created an untenable conflict

1

between her professional obligations to her client and her economic survival.  Defendant further argues that the Government's prosecution of this case has continued undeterred while defense counsel and staff remain unpaid, creating a fundamental imbalance in the adversarial system.

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to have Assistance of Counsel for his defense."  Gideon v. Wainwright, 372 U.S. 335, 340 (1963).  This right requires the appointment of counsel for Defendant here who effectively assists him in his defense against the serious criminal charge he faces.  The right to counsel is meaningless without adequate resources to mount an effective defense.  Ake v. Oklahoma, 470 U.S. 68, 77 (1985).  Thus, Defendant asks that the charge against him be dismissed.  In the alternative, he requests that this matter be stayed; that he be released from custody pending resolution of the funding crisis; and/or his attorney be permitted to withdraw.

As discussed below, the Court finds that dismissal is warranted here.  The right to effective assistance of counsel is a bedrock principle of this country and is indisputably necessary for the operation of a fair criminal justice system.  The systematic and ongoing failure of the Government to fund CJA-appointed attorneys for the past five months has created an indefensible situation in which CJA defense counsel, such as counsel here, are expected to competently represent and defend their clients despite a complete lack of resources to do so.  Trial is set in this matter for January 26, 2026, a mere ten weeks from now.  To expect defense counsel to properly prepare

for trial, while consistently denying her the tools to do so is, in this Court's view, not only unconscionable but also unconstitutional.  Under these unique and unprecedented circumstances, the Court finds that Defendant's constitutional right to an attorney who is obligated to zealously and adequately represent him has been violated.  As for the remedy for this violation, the Court finds that dismissal of the indictment without prejudice is the appropriate remedy.

## II.  BACKGROUND

In 1964, responding to the Supreme Court's decision in Gideon v. Wainwright, 372 U.S. 335 (1963), Congress enacted the CJA "[t]o promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States."  Pub.L. 88-455, 78 Stat. 552 (codified as amended at 18 U.S.C. § 3006A).  Congress enacted the CJA to both "assure adequate representation in the Federal courts of accused persons with insufficient means," and to "afford[ ] reasonable compensation to counsel who are assigned."  In re Smith, 586 F.3d 1169, 1175 (9th Cir. 2009) (quoting S. Rep. No. 88-346, at 1 (1963)).  Thus, the CJA authorizes the appointment of, and compensation for, counsel to represent indigent defendants charged with federal offenses.  18 U.S.C. § 3006A.  Attorneys are paid in accordance with the CJA both for hours spent before the court and those "reasonably expended out of court."  18 U.S.C. § 3006A(d)(1).

Congress's purpose behind instituting CJA compensation was to "ease the financial burden" associated with providing these

services which had been traditionally provided pro bono. United States v. Diaz, 802 F. Supp. 304, 307 (C.D. Cal. 1992). Indeed, in passing the CJA, many lawmakers "emphasized the shortcomings of the existing system under which counsel were assigned on an uncompensated, nonreimbursable basis" and "expressed concern for the stability of convictions if that system were to continue." United States v. Bailey, 581 F.2d 984, 988 (D.C. Cir. 1978). "Providing for compensation of such counsel was considered necessary to prevent the 'mere formal appointment' of counsel and to ensure reasonably diligent, conscientious and competent representation." Diaz, 802 F. Supp. at 307 (quoting Bailey, 581 F.2d at 988).

Defendant here was indicted on November 7, 2024, for one count of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). ECF No. 1. The Court held a detention hearing on November 19, 2024, during which Defendant was remanded into custody[1] and Defendant's current counsel was appointed under the CJA after his previous counsel, the Office of the Federal Public Defender, withdrew. ECF No. 10. The Court subsequently set a trial date for January 26, 2026. ECF No. 21.

At the time defense counsel was appointed, the Government was still in the process of paying CJA-appointed counsel, paralegals, investigators, and experts for expenses related to client representation. Mot. Dismiss at 1-2, ECF No. 23. Payments were initially delayed in June 2025 due to a system upgrade, and then completely stopped in July 2025. Id. at 2.

_____

[1] Defendant remains in custody at the time of this Order.

4

Despite the Government's obligation under the CJA to pay appointed counsel, no payments to CJA-appointed counsel, paralegals, investigators, or experts have been made since then. Id. Accordingly, Defendant's counsel has worked without compensation on CJA cases since June 2025. Id. CJA counsel were assured that payments would resume once Congress passed a budget for Fiscal Year 2026. Id. However, to-date, Congress has failed to pass a federal budget, resulting in a continued funding lapse that began on October 1, 2025.

Defendant filed the pending Motion to Dismiss (ECF No. 23) on October 4, 2025, arguing that the ongoing CJA funding lapse necessitates dismissal of the indictment in this case as Defendant is being denied his Sixth Amendment Right to Counsel. The Government filed an Opposition (ECF No. 24), and Defendant filed a Reply (ECF No. 28). The Court held a hearing on November 4, 2025, and the Motion was taken under submission.

### III. LEGAL STANDARD

Under Rule 12(b) of the Federal Rules of Criminal Procedure, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'" United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993).

However, courts also possess inherent supervisory authority to remedy serious structural defects in the criminal process, see, e.g., United States v. Gonzalez-Lopez, 548 U.S. 140, 148

(2006) (recognizing structural error doctrine), and the judicial power to dismiss indictments in extreme cases under this supervisory authority.  See United States v. Struckman, 611 F.3d 560, 574 (9th Cir. 2010); United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992).  The Ninth Circuit has recognized three "legitimate reasons" for courts exercising supervisory powers to dismiss indictments: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct."  United States v. Matta-Ballesteros, 71 F.3d 754, 763 (9th Cir. 1995).  An indictment can only be dismissed under a court's supervisory powers where a defendant suffers "substantial prejudice" and "no less remedial action is available[.]"  United States v. Chapman, 524 F.3d 1073, 1087 (9th Cir. 2008) (quoting United States v. Jacobs, 855 F.2d 652, 655 (9th Cir. 1988) and United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir. 1991)).

## IV.  OPINION

A.    Violation of Defendant's Sixth Amendment Right

Defendant seeks dismissal of the indictment in this case based on violations of his Sixth Amendment right to effective counsel.  Mot. Dismiss at 2-7.  As noted above, Defendant contends that the Government's systematic failure to provide the necessary and required resources for his defense to his counsel for the past five months has resulted in a violation of his constitutional right to representation.  This situation has resulted in an "untenable conflict between counsel's professional

6

obligations and their basic economic survival," which undoubtedly prejudices Defendant as his counsel faces the prospect of preparing for trial with no financial resources at her disposal. Id. at 2. Indeed, Defendant argues that "[n]o attorney can be expected to work indefinitely without compensation while maintaining the zealous advocacy required by professional standards and constitutional mandate," and points out that "[r]epresentation of a client includes conducting the necessary investigation, assistance of experts and paralegals to prepare a defense [which] cannot be done without compensation." Id. at 3. Thus, Defendant argues that the "prolonged non-payment of appointed counsel violates [his] Sixth Amendment rights and the fundamental guarantee of Gideon v. Wainwright." Id. at 6. The Court agrees.

Here, Congress's prolonged failure to provide funding for defense counsel violates Defendant's fundamental constitutional right. The Government argues that no constitutional injury has occurred because "[n]othing in Ortiz's motion suggests or states that counsel will not continue to represent him according to counsel's ethical obligations, even absent the payment of fees on other cases." Opp'n at 4, ECF No. 24. This argument ignores the reality, however, that with only ten weeks until trial, defense counsel finds herself in the impossible position of needing to provide effective representation to Defendant without the ability to pay for the resources required to do her job. Defendant's right to counsel is meaningless without adequate resources to mount a defense.

The law is clear that it is not sufficient that Defendant be

nominally provided with counsel.  Strickland, 466 U.S. 685-86. Rather, the Sixth Amendment requires that Defendant be provided with effective assistance of counsel.  Id. at 686.  This requirement cannot be satisfied under the current circumstances. Congress's failure to fund defender services has left appointed counsel and the providers necessary to properly prepare for trial unable to fulfill her constitutionally mandated duties.  The Court holds, therefore, Defendant has been denied the right to effective assistance of counsel.

> B.    Remedy for the Constitutional Violation

Defendant has also clearly suffered substantial prejudice stemming from this violation of his constitutional right. Defendant is incarcerated, his trial date is quickly approaching, necessitating increased attention and preparation by both the prosecution and the defense.  But Defendant cannot prepare for trial or move his case forward because the resources needed to mount a defense have not been provided to him.  Those resources would allow defense counsel to accomplish vital tasks to adequately represent Defendant at this stage, including investigating Defendant's case, hiring experts, researching and preparing motions in his defense, formulating a trial strategy, and preparing exhibits.  These are all basic tools necessary to provide Defendant with effective representation that have been meaningfully impeded by the longstanding and ongoing lack of funding to conduct these tasks.  In stark contrast, despite payments for CJA counsel having stopped in June, the Government's attorney admitted at the November 4 hearing that prosecution efforts have continued unabated through most of that time and he

is prepared to begin trial on January 26, 2026. Thus, while Defendant has no resources to defend himself in this case, the Government has been able to fully engage in continued investigation and trial preparation efforts without barriers. Congress's astounding abdication of its duty to provide funding for criminal defense counsel cannot be ignored or condoned. The prejudice to Defendant by such an unprecedented and glaring imbalance in the criminal justice system must be remedied under this Court's inherent supervisory authority.

The Government urges the Court to deny Defendant's motion to dismiss by adopting the reasoning in the recently issued order in United States v. Vasquez, No. 2:25-cr-0135-WBS, 2025 WL 2961906 (E.D. Cal. Oct. 20, 2025). In Vasquez, the court denied a similar motion to dismiss brought by CJA-appointed counsel who had not been paid since June. As Defendant argues, Vasquez should not be followed by this Court because it relies on aging precedent concerning the historical legal tradition of pro bono service to conclude that there is no constitutional right for court-appointed criminal defense counsel, including CJA counsel, to receive compensation. See id. at *2-6. This analysis appears to focus primarily on defense counsel rather than on the Defendant and the impact on him caused by the Government's Sixth Amendment violation. The issue here is one of a violation of a Defendant's right to adequate representation, not an attorney's right to payment. The Vasquez opinion fails to grapple with the prejudice to defendants resulting from Congress's choice not to provide the resources to which they are constitutionally entitled.

The Court agrees with Defendant and declines to follow Vasquez.  So long as no funding is being provided to Defendant, the government is actively impeding Defendant's right to counsel. This interference is so severe and beyond this Court's control there is no lesser remedy at the Court's disposal that can provide Defendant with the relief to which he is entitled.  Under these circumstances, this chronic constitutional violation can only be remedied by a dismissal of the indictment.

When considering an exercise of its supervisory powers for violations of a defendant's constitutional rights, a district court has various options, which should be tailored to the injury caused.  United States v. Morrison, 449 U.S. 361, 365 (1981). The most extreme remedy available — dismissal with prejudice — is not appropriate here.  Such relief is only appropriate where there is "a clear basis in fact and law for doing so."  Isgro, 974 F.2d at 1097; see also Chapman, 524 F.3d at 1085 (explaining that improper dismissal of "an indictment with prejudice encroaches on the prosecutor's charging authority" (internal quotation marks omitted)).  Defendant has not made a showing that the Sixth Amendment violation here, while serious, merits such a drastic response.

In the alternative, the Government suggests that the Court permit defense counsel to withdraw, which is the "common remedy for where there is a conflict of interest between a counsel and his client."  Opp'n at 6.  The Government's suggestion fails to address, however, how the Court might find alternative counsel for Defendant given the severe funding lapse discussed above. Requiring or allowing counsel to withdraw would only result in

Defendant being left involuntarily *in propria persona* with a looming trial date.  Thus, granting defense counsel's request to withdraw is not a viable remedy.

The other two remedies suggested by the parties are to stay the case without releasing the Defendant from custody or staying the case and releasing the Defendant from custody.  The Defendant opposes the former and the Government opposes the latter.  Moreover, neither remedy fully addresses the underlying constitutional violation.

Ultimately, the Court finds that dismissal without prejudice is the appropriate remedy for the constitutional violation at issue here.  As discussed above, Defendant has unquestionably suffered a violation of his constitutional right to counsel and faced substantial prejudice as a result, warranting this result. Dismissal without prejudice provides functionally the same level of relief for Defendant as a stay and release from custody while providing an opportunity for this prosecution to continue, albeit possibly in a different venue.  As both parties must acknowledge, Defendant can still be prosecuted in state court where his constitutional right to adequate counsel would not be impaired. Mot. Dismiss at 4-5.  Dismissal without prejudice also gives the United States the opportunity to refile in federal court once funding is available for CJA counsel and Defendant is again afforded his Sixth Amendment Right to Counsel.  Finally, as opposed to a stay, dismissal also ensures no conflict arises between Defendant's speedy trial rights and the remedy granted by the Court.  Given these considerations, the Court concludes that "no lesser remedial action is available," Chapman, 524 F.3d at

11

1087, i.e., no lesser remedy fully addresses the damages caused by the government's misconduct.

To further ensure that the remedy is as closely tailored to the injury suffered and ensure it does not unnecessarily impede competing interests, the Court administratively stays this Order until November 21 at 5:00 p.m. This will permit the Government to seek appellate review of this Order, should it decide to do so and/or file a motion for reconsideration should the current Government shut down end and adequate funding and resources to prepare for trial be provided to Defendant in a timely manner.

### V. ORDER

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED. The Indictment (ECF No. 1) in this matter is hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that this Order is administratively stayed until November 21, 2025.

IT IS SO ORDERED.

Dated: November 12, 2025

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

12

# EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>NICOLAS VASQUEZ, II,<br><br>        Defendant. | No. 2:25-cr-135-WBS<br><br><br>MEMORANDUM AND ORDER RE:<br>DEFENDANT'S MOTION TO DISMISS |

----oo0oo----

Defendant Nicolas Vasquez, II was indicted on May 29, 2025, and charged with unlawfully possessing ammunition in violation of 18 U.S.C. § 922(G)(1). (Docket No. 1.) Because Vasquez was found to qualify for appointment of counsel, at his initial appearance on June 2, 2025, the Federal Defender was appointed to represent him. (Docket No 7.) Later, on August 4, 2025, because Vasquez was dissatisfied with the representation being afforded to him by the Federal Defender, the court referred the matter for appointment of outside counsel to represent him. (Docket No. 21.) On August 6, 2025, the court ordered present

1

counsel Danica Mazenko appointed to represent defendant pursuant to the Criminal Justice Act (CJA), 18 U.S.C. § 3006A. (Docket No. 23.)

Vasquez, through his newly appointed attorney, has now filed a motion to dismiss the charges against him with prejudice, claiming a deprivation of his right to counsel as guaranteed by the Sixth Amendment to Constitution. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 340 (1963). (Docket No. 34.) Vasquez argues that due to the ongoing lapse in federal funding, "[t]he prolonged non-payment of appointed counsel violates Defendant's Sixth Amendment rights and the fundamental guarantee of Gideon v. Wainwright, warranting dismissal of the indictment." (Id. at 6.)

Vasquez alleges that funding for defense counsel appointed under the CJA was depleted in July 2025 with the result that his counsel "has been working without significant compensation on CJA cases since June 2025." (Docket No. 34 at 2.) As a result of this delay in CJA reimbursements, he argues that "an untenable conflict between counsel's professional obligations and their basic economic survival" has been created that "undermines the attorney-client relationship and compromises the quality of representation guaranteed by the Sixth Amendment." (Id. at 2-3.)

I.  There is no constitutional right to compensation for court-appointed counsel in these circumstances.

The Sixth Amendment does not require that court-appointed counsel be compensated. Gideon v. Wainwright, 372 U.S. 335 (1963), establishes that indigent defendants have a right to

2

court-appointed counsel, and Strickland v. Washington, 466 U.S. 668 (1984), mandates that defendants receive effective assistance of counsel.  However, there is nothing in the Constitution, and nothing in Gideon, Strickland, or their progeny, requiring that counsel receive compensation for representing an indigent criminal defendant.

To the contrary, numerous federal courts have repeatedly and explicitly held that court-appointed counsel do *not* have any constitutional right to compensation.  See Scheehle v. Justs. of Supreme Ct. of Ariz., 508 F.3d 887, 894–95 (9th Cir. 2007) ("The position that any imposition on an attorney's time must be compensated is foreclosed by our prior opinions." (cleaned up); see also United States v. Dillon, 346 F.2d 633 (9th Cir. 1965), cert. denied, 382 U.S. 978 (1966); United States v. 30.64 Acres of Land, 795 F.2d 796, 803 (9th Cir. 1986) ("If a court determines that a case has sufficient merit and a litigant sufficient need to justify uncompensated representation by counsel, we are confident that individual members of the bar will respect that decision and provide the needed services.") (citing Rhodes v. Houston, 258 F.Supp. 546, 579 (D.Neb. 1966) ("To the credit of the legal profession, it may be declared that such a *refusal* will rarely occur.") (emphasis in original), aff'd, 418 F.2d 1309 (8th Cir. 1969), cert. denied, 397 U.S. 1049 (1970)); Powell v. State of Alabama, 287 U.S. 45, 73 (1932) ("Attorneys are officers of the court, and are bound to render service when required by such an appointment."); Peterson v. Nadler, 452 F.2d 754, 758 (8th Cir. 1971); Fam. Div. Trial Laws. of Superior Ct.-D.C., Inc. v. Moultrie, 725 F.2d 695, 705 (D.C. Cir. 1984)

("[T]here is no facial unconstitutionality to the statute or rules that require appointments in uncompensated cases."). (collecting cases).

In United States v. Dillon, the Ninth Circuit held that there was "an obligation on the part of the legal profession to represent indigents upon court order, without compensation." 346 F.2d 633, 635 (9th Cir. 1965), cert. denied, 382 U.S. 978 (1966). There the court reasoned that:

> An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a "taking of his services."

Id.; cf. Kunhardt & Company, Inc. v. United States, 266 U.S. 537 (1925).

Similarly, in 30.64 Acres of Land, the Ninth Circuit observed that,

> Courts have long recognized that attorneys, because of their profession, owe some duty to the court and to the public to serve without compensation when called on. ... [T]he obligation of the legal profession to serve indigents on court order is an ancient and established tradition, and ... appointed counsel have generally been compensated, if at all, only by statutory fees which would be inadequate under just compensation principles, and which are usually payable only in limited types of cases.

795 F.2d at 800-01.

The Dillon court further explained that decisions about

4

schemes providing for the compensation of court-appointed counsel are the purview of legislatures, not courts:

> The problem of providing some system of compensation for appointed counsel, in light of the developing law of the right of indigents to counsel, is a matter for legislative and not judicial treatment. This fact has been recognized by the Congress in the enactment of the Criminal Justice Act of 1964, 78 Stat. 552. The provisions of the Act clearly show that the compensation provided for in said Act is not based upon the principles of just compensation which appear in the Fifth Amendment.

Dillon, 346 F.2d at 636; see Hurtado v. United States, 410 U.S. 578, 588–89 (1973) (citing Dillon); see also White v. United States Pipe & Foundry Co., 646 F.2d 203, 205 n. 3 (5th Cir. 1981).

Indeed, "[a]ny doubt that a state could require some services from an attorney without compensation was dissolved by our opinion in 30.64 Acres of Land[.]" Scheehle, 508 F.3d at 894–95. That said, some courts have left room for the possibility that an attorney's appointment without compensation may constitute a violation of either the Fifth or Thirteenth Amendments, but these exceptions are especially narrow.[1]

---

[1] In Moultrie, the court opined that where a system for the court-appointment of counsel without compensation "effectively denies [counsel] the opportunity to maintain a remunerative practice before their specialized division, and that specialty practice is determined to be a 'property' interest, it might effect an unconstitutional 'taking.'" 725 F.2d at 706 (cleaned up).

Similarly, the Moultrie court also concluded that no "genuine thirteenth amendment issue" was raised because "[a]n attorney who wishes to take no further assignments is free to either stop practicing before the Family Division, or even to continue to practice without taking CJA-compensated juvenile cases." 725 F.2d at 704–05. According to that court, the key ingredient for establishing a claim of involuntary servitude under the Thirteenth Amendment is the "[i]nability to avoid

Case 2:25-cr-00310-JLS   Document 291   Filed 11/20/25   Page 6 of 18

Exceptions which do not apply in this case notwithstanding, on balance the precedent on this question is resoundingly clear.  The position advanced by Vasquez is not merely novel, it runs contrary to the *overwhelming* weight of well-established precedent.

## II.   Vasquez's counsel has not been denied compensation

The foregoing discussion is unnecessary, however, because even if Vasquez were constitutionally entitled to counsel who was compensated by the court, his attorney has not been denied compensation.  CJA-appointed counsels' compensation has only delayed, not denied, by the lack of funding, and at this stage in his case Vasquez's counsel is not entitled to receive any compensation.

First, CJA-appointed counsel have not been denied compensation due to the government shutdown.  Rather, their compensation has merely been deferred or delayed until such time as Congress funds the government.

The United States Courts Defender Services has explained that:

> Fiscal Year 2025 Criminal Justice Act (CJA) panel attorney funds were depleted around July 3, 2025. Panel attorney payments have been deferred (except for one batch of payments on September 18) since that date.  The deferred payments from fiscal year 2025, and new fiscal year 2026 panel attorney payments, continue to be deferred during the current lapse in appropriations.  *Panel attorney payments will resume when a continuing resolution is passed by Congress and*

continued service[.]" Id.   (citing see Flood v. Kuhn, 443 F.2d 264 (2d Cir. 1971), aff'g 316 F.Supp. 271 (S.D.N.Y. 1970), aff'd on other grounds, 407 U.S. 258 (1972); Wicks v. Southern Pacific Co., 231 F.2d 130, 138 (9th Cir. 1956), cert. denied, 351 U.S. 946 (1956)).

6

*signed into law by the President.* Please continue to file, process, and approve CJA vouchers as normal during the payment deferrals so that payments can be disbursed as soon as funding becomes available.

UNITED STATES COURTS: DEFENDER SERVICES, CJA Panel Attorney Funds Information FY 2025 (updated: Oct. 6, 2025), https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-information-fy-2025 (last visited Oct. 17, 2025) (emphasis added).

Once Congress funds the government, CJA-appointed counsel will be entitled to receive their reimbursements including back-pay. Contrary to Vasquez's claims, then, the government has not refused "to honor its compensation obligations." (Docket No. 34 at 4.) More accurately, the government has deferred the honoring of those obligations. These actions are not the same and Vasquez errs by conflating them.

Second, the government correctly notes that CJA-appointed counsel do *not* receive a salary for representing defendants in federal court. Rather, they submit vouchers requesting reimbursement following the conclusion of their representation. It is the court, not the government, that determines whether, how much, and when the attorney shall be paid. See United States v. Feldman, 788 F.2d 625, 626 (9th Cir. 1986). If waiting to be compensated until the conclusion of representation would pose a hardship on counsel, in exceptional cases the court in its discretion can approve vouchers for interim payments, but there is no suggestion that this is such a case.

Here, counsel for Vasquez was appointed on August 5,

7

2025.  (Docket No. 34 at 1.)  Since taking the case, Vasquez's counsel has received discovery from the government (Docket No. 26 at ¶ 3(a-b)) and jointly moved to continue the status conference until October 20, 2025 (Id. at ¶ 2), and no trial date has been set.  In other words, rather than having concluded, the case against Vasquez is ongoing, and counsel's representation is just beginning.  Further, counsel has not identified any costs which have been incurred in the course of representation and are ready to be submitted for payment.

III.  The record does not support a finding of an actual conflict of interest that violates Vasquez's Sixth Amendment rights

"Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980)); see also Holloway v. Arkansas, 435 U.S. 475, 481 (1978).  However, "in order to obtain a dismissal of the indictment," a defendant bears the burden of establishing that he is adversely affected by his representation such that his Sixth Amendment right to counsel has been violated.  United States v. Kriens, 270 F.3d 597, 603 (8th Cir. 2001); see also United States v. Solomon, 679 F.2d 1246, 1250 (8th Cir. 1982).

Importantly, when a defendant alleges that he was adversely affected by his counsel's conflict of interest, "the constitutional predicate for his claim" is not satisfied "until [he] shows that his counsel *actively represented conflicting interests*[.]" Cuyler, 446 U.S. at 350 (citation omitted) (emphasis added).  Said another way, "[i]n order to demonstrate a

8

violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Id.

Here, that burden has not been met.  Vasquez argues that the delayed compensation for his CJA-appointed counsel creates a conflict between "counsel's duty to zealously represent [Vasquez] and counsel's need for economic survival" that "undermines the attorney-client relationship and compromises the quality of representation guaranteed by the Sixth Amendment." (Docket No. 34 at 3.)  Vasquez has shown neither that any actual conflict of interest exists, or that his counsel is actively representing that conflicting interest.

First, Vasquez's counsel accepted his case on August 5, 2025, which was by her own admission at least a month after CJA-appointed counsel were last reimbursed.  (Id. at 2 ("Funding ran out in July 2025, and as a result the undersigned has been working without significant compensation on CJA cases since June 2025.").)  Vasquez's argument for a conflict of interest might be more persuasive had his counsel not accepted appointment *after* she was on notice that funding for CJA-appointed counsel had *already been exhausted*.  To date, Vasquez's counsel has not filed a motion to withdraw, as would be proper in the event of a *genuine* conflict of interest.

This record suggests either that no actual conflict exists or that it is only theoretical.  See Bonin v. Calderon, 59 F.3d 815, 827 (9th Cir. 1995) ("[M]inor or potential conflicts of interest often exist which might theoretically or conceivably affect an attorney's representation, but are not likely to do so.

9

Such 'potential' conflicts are insufficient[.]").

Second, even if there were an actual conflict of interest due to the deferred compensation, Vasquez has not established that his counsel is actively representing that conflicting interest. See Atkins v. Bean, 122 F.4th 760, 786-87 (9th Cir. 2024) (finding no actual conflict where defendant "failed to show any deficient performance by counsel or resulting prejudice."), cert. denied, No. 24-7302, 2025 WL 2906511 (U.S. Oct. 14, 2025).

Counsel's own argument affirms that she has diligently sought to fulfill her professional and ethical duties. "[T]here is a 'presumption that the lawyer will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand.'" United States v. Walter-Eze, 869 F.3d 891, 902 (9th Cir. 2017) (citation omitted). According to Vasquez's motion, "[d]espite the lack of compensation," his counsel has "continued to represent the Defendant to prevent immediate prejudice[.]" (Docket No. 34 at 2.) Indeed, her actions filing this very motion — one which advances a novel legal argument — strongly suggest that she continues to zealously represent her client's interests.

Counsel's contention that due to the lapse in funding, Vasquez cannot access a psychologist in order to evaluate whether he is competent to stand trial is premature at best. Ordinarily, CJA-appointed counsel would first submit a request to retain an expert. The court would then have to approve the request and, eventually, authorize payment for their services at the

10

conclusion of the expert's services.[2] But because no such request has been presented here, the court has not had the opportunity to consider much less approve it. Consequently, the dilemma counsel claims to face is merely hypothetical at this stage and no actual conflicting interest exists for counsel to represent in violation of the Sixth Amendment.

The court is, thus, not persuaded either that Vasquez's counsel is actively representing a conflicting interest or that her delayed compensation constitutes an actual conflict of interest in the first place.

IV.  Ake v. Oklahoma

Vasquez argues that "the right to counsel is meaningless without adequate resources to mount an effective defense." (Docket No 34 at 3 (citing Ake v. Oklahoma, 470 U.S. 68, 77 (1985)).) While as a general proposition that is true, it does not apply to this case for the following reasons:

_____

[2] In his reply brief, defendant states that "CJA attorneys in the Eastern District of California no longer have any psychologists to call upon for CJA cases, at least until the budget crisis is resolved." He adds that psychologists and other experts will accept CJA cases only if appointed counsel advance their personal funds to cover the expected fees. (Docket No. 37 at 3.) At oral argument, defense counsel stated she had attempted to retain one psychologist who was unavailable, and that she had spoken with 20 other CJA attorneys who told her there were no experts who would accept appointment. Since this is the first time the court has heard any of these hearsay allegations, the government has not had an adequate opportunity to respond to them, nor has the court had an opportunity to explore, through the Federal Defender, whether there are psychologists available to accept the appointment. After all, it is not as if they would not be paid. They would only have to wait for payment until after the shutdown, and they would have to wait until after their services have been performed anyway. It is hard to believe that there is no qualified psychologist who would accept appointment on these terms.

11

In *Ake*, the Supreme Court "focused on identifying the 'basic tools of an adequate defense or appeal,'" and "required that such tools be provided to those defendants who cannot afford to pay for them." *Ake*, 470 U.S. at 77 (citing *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)). The specific "tool" at issue in *Ake* was an expert evaluation by a psychiatrist in support of an insanity defense. *Id.* at 72; *see also id.* at 70 ("The issue in this case is whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question.").

In his motion, Vasquez failed to specify any "basic tools" he is being denied as a result of delayed compensation for his CJA-appointed counsel. Now, for the first time, in Vasquez's reply to the government's opposition to the motion, his attorney indicates that the real problem is that she is unable to explain the procedure for requesting a bail review to Vasquez and that he is immovable in his believe that he is entitled to pretrial release. As a result, she feels a psychological evaluation of the defendant is a basic resource she needs in order to provide effective representation. However, she says that "most CJA providers and experts ceased accepting appointments to new cases in July and August of 2025." (Docket No. 37 at 3.) She adds that "BOP facility forensic psychologists are currently furloughed.

These facts might justify a court session at which the mechanics of pretrial release and bail review are further

12

explained to Vasquez.  They might also justify enlisting the assistance of the Federal Defender's office in finding a qualified expert who is willing to consult with counsel and/or examine the defendant.  But other than making passing mention of these options in her reply brief, counsel has made no request for any of them, and dismissal of the indictment is certainly not justified on the basis of this record.

More generally, Vasquez's reliance on Ake is misplaced as the case is properly distinguished because scope of the Court's holding in Ake was limited due to the facts of that case, most especially that it was a capital case: "Nothing in the Court's opinion reaches non-capital cases." Ake, 470 U.S. at 87 (Burger, C.J., concurring) ("The facts of the case and the question presented confine the actual holding of the Court.  In capital cases the finality of the sentence imposed warrants protections that may or may not be required in other cases.")). Here, Vasquez has not been charged with a capital offense.  (See generally Docket No. 1.)

Further, Vasquez asserts that the "fundamental fairness and equal protection principles inherent in the adversarial system" has been violated because the prosecutors are being compensated while defense counsel are not.  (Id. at 3.)  But with there being no action in this case other than a continuance of the status conference while Vasquez's counsel caught herself up with the case to date, Vasquez has not pointed to any prosecutorial activities on the part of the government (other than providing Vasquez with discovery) that prejudiced him.

Nor has Vasquez shown how he even *could* be prejudiced

13

by the government temporarily continuing to prosecute its case against him given that CJA-appointed counsel, not being salaried, are typically only entitled to reimbursement *after* the conclusion of their representation.  Moreover, even if the Court agreed with Vasquez's on this point, his claim would have been mooted when funding lapsed on October 1, 2025.  Since that date, counsel for the government has been operating under the same reimbursement conditions as CJA-appointed counsel.  (Docket No. 36 at 6 n. 6.)

V.    State v. Peart

Vasquez argues that "[a]t least one court has recognized that dismissal may be warranted when systemic underfunding of defense counsel violates constitutional rights." (Docket No. 34 at 4.)  Indeed, Vasquez identifies *only* one case: State v. Peart, 621 So. 2d 780 (La. 1993).  Setting aside the fact that Peart is not a not a federal court decision, but a Louisiana Supreme Court case arising from a state court proceeding, the facts of Peart clearly distinguish it from the facts of this case.

In Peart, the trial court found that Teissier, the defender in question, "was not able to provide his clients with reasonably effective assistance of counsel because of the conditions affecting his work, primarily the large number of cases assigned to him." 621 So. 2d at 784.  The trial court found that,

> At the time of his appointment, Teissier was handling 70 active felony cases.  His clients are routinely incarcerated 30 to 70 days before he meets with them. In the period between January 1 and August 1, 1991, Teissier represented 418 defendants.  Of these, he entered 130 guilty pleas at arraignment.  He had at

14

> least one serious case set for trial for every trial date during that period. OIDP has only enough funds to hire three investigators. They are responsible for rendering assistance in more than 7,000 cases per year in the ten sections of Criminal District Court, plus cases in Juvenile Court, Traffic Court, and Magistrates' Court. In a routine case Teissier receives no investigative support at all. There are no funds for expert witnesses. OIDP's library is inadequate.

Id.

Ultimately, the trial court found that the system of compensation for counsel representing indigent defendants "was unconstitutional as applied in the City of New Orleans because it [did] not provide adequate funding for indigent defense and because it place[d] the burden of funding indigent defense on the city of New Orleans." Id. On appeal, the Louisiana Supreme Court overturned the trial court's rulings as to the statutory scheme for funding counsel for indigent defendants and remanded the case back to the trial court for further proceedings. Id. at 792. In particular, on remand the Louisiana high court also found that Peart and other indigent defendants similarly situated may have been deprived of effective assistance of counsel and so instructed the trial court to hold such hearings as necessary to ensure defendants' rights were not violated. Id.

Nothing like the facts in Peart can be found from the record in this case. While a state court in one case found that dismissal may be appropriate on a case-by-case basis where indigent defendants are represented by a wholly under resourced representation funding scheme, the extreme factual context of Peart make it entirely inapplicable to this case.

15

## VI. Vasquez's proposed alternative remedies

As alternatives to dismissal of the indictment with prejudice, Vasquez suggests several lesser remedies, which are either unnecessary, inadequate or excessive. Releasing him on his own recognizance fails to either rectify the prejudice or mitigate the conditions giving rise to it and would ignore the Pretrial Services officer's determination that Vasquez poses both a flight risk and an ongoing danger to the public. (See Docket No. 30 at 4.) Issuing an "[o]rder requiring immediate payment of all outstanding fees in all CJA cases". (Id.), is untenable because it is inappropriately broad and would require the court to exercise authority that it does not have – namely, to order the federal government to issue payment of funds not yet appropriated by Congress.

The suggestion that this court should dismiss the Indictment in this federal case in favor of prosecution by the local prosecutor in state court runs afoul of both the concept of federalism and the separation of powers. The Ninth Circuit has cautioned that charging decisions are within the prosecutors', and not the courts', domain. See United States v. Miller, 722 F.2d 562, 565 (9th Cir. 1983). It is within the exclusive province of the United States Attorney to determine what charges are to be brought and where.

## VII. Conclusion

This motion is just one of a number of similar motions filed in cases pending in this and other districts seeking to

16

dismiss indictments because of the lack of funds to pay the fees and costs of defense incurred by court-appointed counsel. Counsels' characterization of this situation as unprecedented is more than just a little misleading.  It has been only 32 days since the last batch of CJA payments was issued and 20 days since Congress failed to make appropriations to fund government operations.  While the current lapse in funding may be longer than previous ones, it is certainly not the first.

To put this in historical perspective, during the more than 19 months between the Supreme Court's decision in Gideon and the enactment of the CJA, the courts were required to appoint counsel for indigent defendants, although Congress had not appropriated funds to compensate attorneys to represent such defendants, and there were no paid federal defenders.  The courts' solution for that crisis was not to summarily dismiss the indictments in all pending cases against indigent defendants, nor to preclude the government from bringing such cases, or even to stay the proceedings.  Instead, the lawyers of this community answered the call by willingly undertaking representation of those indigent defendants pro bono.

Subsequently, since the implementation of the Congressional Budget and Impoundment Control Act of 1974, there have been 20 federal government shutdowns due to a lapse in funding, excluding the current shutdown.  See CONG. RESEARCH SERV., RL34680, *Shutdown of the Federal Government: Causes, Processes, and Effects* 6 tbl.1 (2019), https://sgp.fas.org/crs/misc/RL34680.pdf.  Throughout this 48-year history, *no* federal court to this court' knowledge has found

17

that the delayed reimbursement of CJA-appointed defense counsel constituted a violation of a defendant's Sixth Amendment right to counsel.

"[T]he power to dismiss an indictment is 'reserved ... for extremely limited circumstances.' Whitehouse v. United States District Court, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988))." United States v. Lin, No. 22-CR-10279-AK-11, 2025 WL 641371, at *3 (D. Mass. Feb. 27, 2025). As such, "[d]ismissal of an indictment is not to be lightly granted." United States v. Soc'y of Indep. Gasoline Marketers, No. B-76-0314, 1977 WL 1508, at *2 (D. Md. Feb. 24, 1977).[3] For the reasons discussed above, the court finds that Vasquez has failed to show the exceptional circumstances necessary to justify departure from this long-standing precedent counselling against dismissal.

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss (Docket No. 34) be, and the same hereby is, DENIED.

Dated: October 20, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[3] See also United States v. Filer, 762 F. Supp. 3d 730, 746 (N.D. Ill. 2025), appeal dismissed, No. 25-1079, 2025 WL 1952087 (7th Cir. Jan. 19, 2025) (citations omitted) (holding that "Federal courts are advised to exhibit a modicum of restraint when considering whether to dismiss an indictment because a dismissal encroaches not only upon the fundamental role of the grand jury, but also upon the role of the prosecutor.") (citation omitted)).

18

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cr-00302-JAM |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR RECONSIDERATION** |
| JULIAN RAYMON ORTIZ, | |
| Defendant. | |

## I.    INTRODUCTION

The Court granted dismissal of the Indictment in this matter on November 12, 2025, finding that an exceptionally prolonged lapse in Criminal Justice Act ("CJA") funding for Defendant's counsel had violated Defendant's Sixth Amendment right to effective assistance of counsel and prejudiced Defendant's ability to prepare an adequate defense for his January 26, 2026, trial.  The Government now seeks reconsideration of that dismissal, citing a recent temporary restoration of CJA funding for defense counsel, arguing this renders the harm suffered by Defendant moot and the remedy of dismissal too severe.

1

As explained below, the Court disagrees.  The restoration of CJA funding now does nothing to properly address the fact that Defendant was deprived of adequate resources to prepare a defense to the felony criminal charge against him for five months while the Government's preparations for trial, which is set to start a mere seven weeks from now, continued unabated.  The Government argues that a continuance, rather than dismissal, is the appropriate remedy now that funding has been restored to allow defense counsel additional time to prepare.  However, CJA funding has only temporarily been restored through the end of January 2026.  Even if this Court were to grant a continuance now, the record in this case reveals that it is reasonable to conclude that that Defendant may still not have adequate time to prepare for trial and that another funding lapse is a foregone conclusion.[1]  Under these unique and unprecedented circumstances, the Court declines to penalize Defendant by extending his pretrial detention time and jeopardizing his speedy trial rights based on such uncertainties.

Rather, the Court holds that dismissal without prejudice remains the sole lawfully appropriate remedy here.  Dismissal creates a more even playing field by turning back the clock and returning both the Government and Defendant to square one.

---

[1] The Court takes judicial notice that the most recent information provided by the Administrative Office of the Courts in its December 5, 2025 Memorandum is that the Senate Appropriations Committee's draft of the FY 2026 appropriations bill includes funding for Defender Services that would require suspension of panel attorney payments beginning on or about August 6, 2026, and the House of Representatives proposed funding would require panel attorneys payments to be suspended beginning around July 16, 2026.

Dismissal does not unfairly penalize the prosecutors since the Government still has an opportunity to refile federal charges against Defendant if it so desires. At the same time it allows Defendant a reasonable opportunity to prepare for trial without a five-month long handicap. The Court acknowledges that such drastic measures may not be required in every, or indeed, most cases where a Sixth Amendment violation has occurred. In this case, however, the Court denies the Government's Motion For Reconsideration and reaffirms that dismissal without prejudice is the appropriate remedy given Defendant's rapidly approaching trial date and his inability to prepare at all for trial, as well as the unprecedented and potentially ongoing CJA-funding crisis.

## II.    BACKGROUND

On October 4, 2025, Defendant Julian Raymon Ortiz moved this Court to dismiss the indictment in this matter under Federal Rule of Criminal Procedure 12(b)(1) because his Sixth Amendment Right to Counsel was being violated. ECF No. 23. Defendant argued his counsel, who was appointed pursuant to the CJA, 18 U.S.C. § 3006A, had not received compensation for her representation since June 2025 due to a CJA-funding shortage and ongoing government shutdown, which Defendant argued impeded counsel's ability to prepare an adequate defense, particularly in light of Defendant's pending January 26, 2026, trial date. Id.

The Court granted dismissal on November 12, 2025, holding that the "systematic and ongoing failure of the Government to fund CJA-appointed attorneys for the past five months" violated Defendant's fundamental right to effective assistance of counsel as, a mere ten weeks before trial, Defendant's counsel found

3

"herself in the impossible position of needing to provide effective representation to Defendant" with "no financial resources at her disposal" to do so.  ECF No. 30.  The Court noted that, while Defendant could not "prepare for trial or move his case forward because the resources needed to mount a defense ha[d] not been provided to him," the Government's prosecution efforts had continued unabated during the funding lapse such that the Government was fully prepared to begin trial on January 26, 2026.  Id.  Given this "unprecedented and glaring imbalance in the criminal justice system," the Court concluded that dismissal without prejudice was the sole remedy sufficient to address the prejudice suffered by Defendant on the eve of trial.  Id.

Shortly thereafter, on November 13, 2025, Congress passed, and the President signed, a continuing resolution that provided funding for CJA lawyers through January 30, 2026, as well as funding for the backlog of CJA payments due from fiscal year 2025.  See ECF No. 31 at 2.  Given this development, the Government filed a Motion for Reconsideration (ECF No. 31) asking this Court to vacate its Order dismissing the indictment without prejudice and schedule a new date for trial.  Defendant filed an Opposition (ECF No. 33), and the Government filed a Reply (ECF No. 34).

### III. LEGAL STANDARD

Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, the Ninth Circuit has held that motions for reconsideration may be filed in criminal cases.  United States v. Martin, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) (citations omitted) ("[P]ost-

judgment motions for reconsideration may be filed in criminal cases.").  In ruling on motions for reconsideration in criminal cases, courts rely on the standards governing reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b).  United States v. Arcila, No. 3:14-cr-00267-HZ-3, 2024 WL 2048643, at *1 (D. Or. May 6, 2024) (citation omitted).

Reconsideration of an order is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Kona Enters., Inc. v. Est. of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted).  A court may reconsider its earlier decision if it "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).  Ultimately, whether to grant or deny a motion for reconsideration is in the sound discretion of the district court.  Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

### IV.  OPINION

The Government argues that reconsideration is warranted here because "the sole rationale for the Court's dismissal Order is now moot based upon the restoration of [CJA] funding[.]"  Mot. Recons. at 3, ECF No. 31; see also Reply Mot. Recons. at 1-3, ECF No. 34.  Although CJA funding is now in place, at least until January 31, 2026, the restoration of funding has done nothing to cure the constitutional injury already suffered by Defendant due to Congress's intentional decision not to provide

constitutionally mandated funding for over five months.  As Defendant's counsel persuasively argues,

> Mr. Ortiz has lost almost five months of trial preparation.  That cannot be undone and the recent temporary funding bill does nothing to right that wrong.  Mr. Ortiz will now be forced to choose between two constitutional rights — effective counsel or a speedy trial.  Time cannot be excluded for trial preparation when the Government created a situation that essentially denied Mr. Ortiz's counsel the ability to prepare for more than five months.

Opp'n Mot. Recons. at 3, ECF No. 33.  The Court finds that the injury suffered by Defendant, and thus the case and controversy before this Court, are far from moot.

The Government also argues that a continuance rather than dismissal is the more appropriate remedy now that funding has been restored.  Mot. Recons. at 8.  However, the Court rejects the Government's apparent contention that the recent restoration of funding is sufficient to fix the Sixth Amendment violation moving forward.  To date, it is unclear whether all CJA backlog payments have been fully disbursed.  More significantly, there is concerning evidence in this record projecting that the funding crisis may well continue in January 2026, potentially prolonging and exacerbating the injury already suffered by Defendant.  See Opp'n Mot. Recons. at 3-5; see also Opp'n Mot. Recons., Ex. A, ECF No. 33-1 (letter from Federal Public and Community Defenders to Senate Committee on Appropriations expressing concern over persistent underfunding of federal public defense); Opp'n Mot. Recons., Ex. B, ECF No. 33-2 (memo from Heather Williams, Federal Defender for the Eastern District of California, detailing ongoing financial crisis and warning "there is no guarantee we won't be back in appropriation lapse mode again come January 31,

6

2026"); Opp'n Mot. Recons., Ex. C, ECF No. 33-3 (letter from Administrative Office of the Courts providing update on judiciary operations under the continuing resolution and planning in case of another lapse in appropriations).[2]  Requiring defense counsel to prepare for trial now risks prolonging Defendant's pretrial detention time with no guarantee that trial preparations will be complete before the next possible shutdown.  The Court will not impose such a burden on Defendant or his counsel.

The Court does not order dismissal without prejudice lightly and acknowledges that both the Supreme Court and the Ninth Circuit have found that dismissal of an indictment under different circumstances involving a Sixth Amendment violation is plainly inappropriate.  See Reply Mot. Recons. at 5-8 and cases cited therein.  That said, this remedy is compelled by the unique circumstances before the Court in this specific case, including a prolonged CJA-funding lapse; a Defendant who has had no opportunity to adequately investigate the charge against him and properly prepare for trial; an adversary with unlimited resources who is fully prepared to go to trial; a rapidly approaching trial date; and no guarantee that the appropriation lapse that created this crisis will not occur again.  Under different facts, the Court might well reach a different conclusion.  Cf., e.g., United States v. Castro, Jr., No. 2:24-cr-00074-JAM, 2025 WL 3467795 (E.D. Cal. Dec. 3, 2025) (finding Sixth Amendment violation due to CJA-funding lapse but granting a continuance rather than

---

[2] The Court takes judicial notice of these exhibits.  See Daniels-Hall v. Natl. Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) (a court may take judicial notice under Federal Rule of Evidence 201 of publicly available government documents).

7

ordering dismissal given the lack of a set trial date).  However, the law clearly permits the Court to remedy extreme structural defects in the criminal process such as those presented here. See Order at 5-6, ECF No. 30 (summarizing law on court's ability to dismiss indictments under supervisory authority).

The Government argues that such authority is inapplicable here, as a "district court's exercise of supervisory authority to dismiss a criminal indictment has always referred to agents and representatives of the Executive Branch" and "has never been extended to reach action (or inaction) by the Legislative Branch."  Reply Mot. Recons. at 6.  While that may be true, the Government does not cite any authority that a court's supervisory authority may not under any circumstances be exercised in response to Legislative Branch action (or inaction).

Further, the Court is not, as the Government suggests, attempting to "remedy[] failures of Congress by dismissing a valid indictment" or "deter[] Congress from future dysfunction." Id.  The Court agrees that such remedies are beyond the scope of the Court's powers here. As the Ninth Circuit has explained,

> Under their supervisory power, courts have substantial authority to oversee their own affairs to ensure that justice is done.  They do not, however, have a license to intrude into the authority, powers and functions of the coordinate branches.  Judges are not legislators, free to make laws guided only by their moral compass or notions of national interest; nor are they executive officers, vested with discretion over law enforcement policy and decisions.  Thus, while the supervisory power does empower judges to formulate procedural rules not specifically contemplated by Congress or the Constitution . . . it does not justify a chancellor's foot veto over activities of coequal branches of government . . . judges must be careful to supervise their own affairs and not those of the other branches.  The Constitution empowers the judiciary to thwart the will of the other branches only when their

8

behavior is not in accordance with law . . . . United States v. Simpson, 927 F.2d 1088, 1089-91 (9th Cir. 1991) (internal quotations and citations omitted).

In the case at bar, the Court is imposing a remedy that will fix a concrete and particularized injury suffered by this Defendant. The Defendant has been demonstrably prejudiced and the relief ordered is appropriate under the circumstances to assure him the effective assistance of counsel and a fair trial. That such injury stems from Legislative rather than Executive Branch action does not change the nature of the injury suffered, nor the Court's conviction that dismissal without prejudice is an available and appropriate remedy for that injury. See United States v. Matta-Ballesteros, 71 F.3d 754, 763 (9th Cir. 1995) (explaining that a court may exercise its supervisory powers to dismiss an indictment in order to, among other things, "implement a remedy for the violation of a recognized statutory or constitutional right").

This Court is also aware, of course, that there is disagreement among the Judges in this District as to whether dismissal of the indictment is the appropriate remedy here. See United States v. Vasquez, No. 2:25-cr-00135-WBS, 2025 WL 2961906 (E.D. Cal. Oct. 20, 2025) (finding no Sixth Amendment violation and denying dismissal); United States v. Evanovich, No. 2:24-CR-00079-DJC, 2025 WL 3208308 (E.D. Cal. Nov. 17, 2025) (finding Sixth Amendment violation and granting continuance but denying dismissal). Now that funding for the attorney representing Defendant has been (or will soon be) restored, it is fair to ask what remedy dismissal without prejudice practically provides

given the Government's ability to immediately seek a new indictment.

The answer, in this Court's opinion, is that a dismissal without prejudice gives the Defendant the relief to which he is legally entitled — a more even playing field given that his trial is currently set for January 26, 2026, and he has had no opportunity to investigate the charge against him or prepare his defenses. Dismissal requires the Government to start over and decide whether seeking a new indictment under these circumstances is fair and just. Dismissal also puts the Defendant back to the position he was in before his constitutional right to counsel was violated. Finally, dismissal preserves the integrity of the judicial process.

Once again, it is worth noting that this case presents a situation never before faced by this Court – an intentional decision by Congress not to provide the resources required by a Defendant to properly defend himself against a serious criminal charge. Given the extraordinary nature of the constitutional violation here and the prejudicial impact it has had on Defendant, a dismissal of the indictment without prejudice allows the criminal justice system to operate as it is intended. The prosecutor's code is not to achieve convictions under such circumstances as these, where a Defendant has a looming trial date and has been given no resources to mount an effective defense. The job of the prosecutor is to do justice. Sometimes, as in this case, that means starting the process over, including reconsidering whether a federal indictment is warranted. This Court, therefore, finds that dismissal of the indictment without

prejudice is the lawfully appropriate remedy — that is, it is the remedy that allows the Court to ensure that all Parties receive justice under the law.

**V.    ORDER**

For the reasons set forth above, the Government's Motion for Reconsideration (ECF No. 31) is DENIED.  The Indictment (ECF No. 1) in this matter is hereby DISMISSED WITHOUT PREJUDICE.  The December 9, 2025, trial confirmation hearing and January 26, 2026, trial date in this matter are VACATED.  Defendant shall, forthwith, be released from custody.

IT IS SO ORDERED.

Dated: December 8, 2025

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

11